Good morning, Your Honors. May it please the Court, Michael von Lohenfeldt for the appellant, Curtis Ayers. I'd like to reserve about two minutes if I can. Okay. And we'll try to help you. All right. Thank you, Your Honors. Your Honors, the immunities in this case are important. We need people to be able to make reports to police and testify in proceedings without fear that they'll be sued in retaliation for doing that. We need public officials to be able to do their job without being sued in retaliation for doing that. And we need courts to apply these immunities when presented to them. That didn't happen here. I think that the law on 47B and the briefing on qualified immunity is a little clearer, and I'd like to focus on the 821.6 issue. But, of course, if the panel has questions about the other immunities, I'm happy to discuss that. As you do that, will you give us your best argument that Ayers is not entitled to immunity under 47B? That's their argument, Your Honor. Okay. We'll let them argue it. I wonder what your comment was, but we'll go to them. Right. He clearly is entitled to immunity under 47B. In terms of 821.6, you know, the California law is very clear. There's — I said 30 in the brief, but it's actually 40 years of jurisprudence since Sullivan that consistently finds that immunity applies not just to prosecution itself, but to acts leading up to it, including investigation. And this Court used to agree, and in fact still does in many cases. But I'm — Well, I think your problem is not only do we have the Garman case, but Sullivan is from the State highest court in the land. Yes, Your Honor, that's true, but so is Asgari, which Garman didn't discuss. And in Asgari, which is a more recent California Supreme Court case, the Court applied immunity to a claim of intentional infliction of emotional distress and a claim of false And I think there are two substantial problems with the analysis in Garman under Erie. The first is that the Garman court did not consider Asgari at all. And that's the most recent statement by the California Supreme Court, not Sullivan some decades earlier.    of appeal decisions in California are not irrelevant to the Erie analysis. It's not enough to say there's a Supreme Court case, so we're going to disregard the dozen-plus subsequent court of appeal decisions. You have to harmonize them unless it's clear that they're all wrong. And as I said, in Asgari, the California Supreme Court cites with approval both Bauman and Amilu R., which are the principal California appeals court cases, discussing immunity as applying to investigations. And they're on all fours with the facts of this case. They're search warrant cases. They're investigation cases. And frankly, Your Honor, so is Correus from two months ago, where this Court applied immunity under 821.6. So is Makovsky v. Garden Grove, where this Court applied immunity in December 2016 after the Garman decision. And if you go back further, in Blackenhorn v. Orange in 2006, that's 485F3rd 463, a published decision, the Ninth Circuit recognized that 821.6 immunity applies to investigations. And then suddenly in 2016, we get Garman, which doesn't discuss Asgari, doesn't discuss Blackenhorn, the previous Ninth Circuit law, and it makes a completely different decision, which essentially turns the immunity from an immunity to a pleading trap, which is easily avoided, as it would have been in all of the cases we cite, and strips police officers and other investigators from any immunity. If it's just Melissa's prosecution, there's no immunity for searches. There's no immunity for investigations. There's none of the California Court of Appeals' decisions make sense, Asgari doesn't make sense from the Supreme Court. And so what we have, if the Ninth Circuit continues down that path, and I don't think you're bound by Garman. This is an eerie guess situation. You're not making law. You're guessing, you're predicting what the California courts would do. So you're suggesting that even if you're right, aren't we bound by Garman unless there's a Gammey v. Miller change or we have an en banc process? It's a very difficult question, Your Honor. I think that the eerie rule is more important than the horizontal stare decisis rule, because ultimately you're bound by eerie. You're bound not to create splits inside the Ninth Circuit. And again, I would note, this Court in unpublished decisions has repeatedly disregarded Garman and enforced immunity. And I have a hard time explaining to my client why those people are entitled to immunity, but he's not, because of publication rules. If you do feel bound, Your Honor ---- Sotomayor, since your time is running short, can I have you talk about immunity with regard to Mr. Ayer's presence at the search warrant? How do you reconcile that with Wilson v. Lane? I think Wilson v. Lane is about having a TV show like Cops come along for a ride-along that has nothing to do with any type of law enforcement or government purpose. I think that's totally different. So here we have a state ---- But his government purpose was not related to the search. His government purpose ---- that's what the search warrant wasn't for his government purpose, so why isn't he just the same as a reporter? And when you get down to it ---- Well, he's not the same as a reporter for several reasons. First, he has an independent right under State law to inspect the records. Well, but those State law provisions don't allow for searches of this nature. As I read Wilson v. Lane, it's the key is whether the third party's presence is necessary to aid in the execution of the warrant. And so while the facts in Wilson v. Lane are much farther afield than the facts of this particular case, Ayer's presence was really not an aid of the warrant. There isn't any argument that it was, in fact, an aid of the execution of the warrant. Is there? Well, actually, I think the testimony, and again, it's not in the record here, is that one of the reasons he was asked to come along is to show where the altercation occurred. But if the question is, is his looking for tax ---- is his looking at tax records in aid of the warrant, I think with hindsight we would say no. But this is someone whose supervisor told him to go to the search. The supervisor, by the way, who's not been sued, which I think goes to the retaliatory nature of this lawsuit, his supervisor told him to go to the search. The police officer told him to go to the search. I think from a qualified immunity perspective, a reasonable person in his position would not have known he's not allowed to do this. It's a harder question, I'll grant you, whether he should have been at the search in the first place. I do think that the State tax law, which, no, doesn't allow the CHP to come in, but it does require business owners to produce these records and make them available. And, you know, whether the State procedures are followed is not the same thing as whether there's been a constitutional violation. But I think from a qualified immunity perspective, which is what we're talking about, Ayers had ample reason to think what he was doing was okay, not the least of which is that his supervisor told him to do it and the police officer in charge told him to do it. So I would suggest that even if the Court were to reach the question, which ----           Go ahead. Go ahead. Go ahead. Go ahead. Go ahead. You're not saying that the court directed him to do that? Yes, Your Honor, it is. We cited that in our brief and that was uncontested. Where is it? Please. You want the specific site? Sure. Yes, please. If you look at ER 651 and ER 488-89, those discuss the supervisor's instruction and the invitation of the CHP officer. How do those facts change the qualified immunity analysis if we find that Wilson v. Lane is the clearly established law that third parties can't be present unless it's an aid of the execution of the warrant? So the fact that he followed his supervisor's directive while sympathetic to Iyer's situation, does it change the qualified immunity analysis? It does, Your Honor, because facts matter in the Fourth Amendment context. And the Lane case is about a media ride-along. It's not about people trying to do their government jobs. And I think that distinction matters. So, and certainly I think it would matter to someone like Ayers, who's not a trained lawyer, who's not even a trained police officer, and we're supposed to put ourselves in his shoes. I thought we're supposed to put ourselves in the shoes of the objective, the objective government official, not what this person subjectively sought, because that it was the other way, you know, where we would be under the case law. So you can't give him a benefit by having a good thought in his mind if an objective police officer or government official wouldn't have done it. But that's – I'm not saying that at all, Your Honor. I'm saying you look at the objective person in his job. You don't look at the objective district attorney or the objective police officer. You look at the objective person in Mr. Ayers's job. And that person would have no reason to know he was not allowed to comply with his supervisor's instruction or the police officer's invitation to his supervisor to come to the search. You have virtually no time left. Do you want to say what you have? I do, Your Honor. Thank you very much. Okay. Good morning, Your Honors. Good morning. My name is Polly Estes, and I represent Appalee's Robert Honan and his business, advanced building and metal fabrication. Let me begin by giving you my answers to your own questions, unless you have something specific for me. It's on 47B, right? Okay. On 47B, we concede that he – that Ayers is entitled to immunity under 47B solely for the statements that he made to Wilson and Sheely regarding this investigation. That, of course, does not apply to his presence and conduct at the warrantless search. So I'll turn to that next. So my learned friend discusses that Wilson versus Laney is distinguished because there it was a journalist and a photographer, and here we have an official doing his job. But that's not quite right. Here we have an official who was put on notice that participating in a warrantless search was unlawful by several different authorities of which any reasonable state government official should have known. First off, there's the Fourth Amendment to the United States Constitution, which clearly states that state actors cannot conduct warrantless searches. Pardon me. Secondly, there's Article I, Section I of the California Constitution, which also provides similar qualifications. And then there's California Penal Code, Section 1530, which goes right to the heart of this situation. 1530 states, a search warrant may in all cases be served by any of the officers mentioned in its directions, but by no other person except in aid of the officer on his requiring it, he being present and acting in its execution. So they've got to be aiding the officers and the officers have to require it. Here, the warrant was directed solely to any sheriff, marshal, or police officer in the county of Butte. It said nothing about the Board of Equalization employees. Secondly, they were only authorized to search for video and audio recordings. They were not authorized to search through all of the papers, both business and personal, looking for any violation at all. So that, as Officer Wilson put it when he talked to the BOE employees, we should not allow this business owner to get away with anything. It was, in fact, retaliation on his part to conduct the search. Now, counsel cites Garney, which is not directly on point, because there you have a government official who is actually acting pursuant to the valid regulations and doing his job. Here, however, a reasonable officer in Ayer's position would have known that he had to participate solely according to BOE guidelines, which he violated. There's 18 CCR section 1698.5, which says there must first be a pre-audit meeting and the BOE must send an information and document request to the business owner, give the business owner a chance to gather all the documents, and then meet with the business owner at a previously scheduled meeting. Also, under California Revenue and Taxation Code section 7054, it requires proof that the inspector was authorized in writing by the board to conduct an examination. None of those facts appeared here. They just simply showed up to look at everything, according to them, and they did just that. They walked through not only the entire building, but also the storage facilities out back, which were explicitly excluded from the warrant. Now address the 821.6 immediately. Absolutely. We've got Sullivan, and then we've got our own authority of Garmin, but it seems like the weight of California court appeal decisions are going the other way, or have gone the other way. It certainly is, and if this court was the California Supreme Court, we'd really have something to talk about. But this court is bound by its own precedent to follow the decision, any binding precedent, of the state's highest court. All of the cases that counsel has cited are lower appellate court decisions. The only highest state court decision that actually is directly on point is Sullivan. And this court, quite recently in Garmin, reviewed it and, as you know, said that it thought if the California Supreme Court were to revisit the issue, even though there had been a slew of appellate decisions going the other way, they thought it would still follow Sullivan. And so this panel is bound by Garmin. Now counsel suggests two remedies to that. First, he says, well, you could certify the question to the California Supreme Court. That suggestion, number one, came in an untimely manner. And secondly, California Rule of Court 8.548, which is what governs certified questions, has two requirements, one of which is that there is no controlling precedent. Here there is. There's Sullivan. Secondly, counsel suggests that this court could hear the issue initially en banc, but it simply does not meet the standards of FRAP 35. There are, although counsel cites unpublished opinions, memorandum dispositions of this court, there are no published decisions that conflict with Garmin. And, of course, it's completely inappropriate to either cite or discuss unpublished decisions to this court.  In his case in England, when he applied his 22 years of state and federal trial judge experience to deny these motions for partial summary judgment, remember they concede that the issues regarding theft of the gold and silver and computer equipment have to go back for trial, that he was absolutely correct when he held there are a multitude of material questions of fact, including issues of credibility on both sides, precluding resolution of this case short of trial. The factual disputes in this case are not only material, they are overwhelming in nature. So the bottom line request by you is that we affirm on everything with the exception of immunity on the reporting, the initial reporting statements. On that, we would have to reverse. Correct. Correct. And we do, while we concede that the complaint as pleaded does not contain a cause of action for malicious prosecution, I was not trial counsel. And having now taken over, I do reserve the right to consider amending the complaint on remand. In response to my colleague's question, I thought you said that you conceded that Ayers was entitled to immunity under 47B with respect to his statements. Did I misunderstand you? Yes, to his statements when he reported the crime, the alleged crime on May 7th to Officer Sheely, and then again on May 10th when he talked to Officer Wilson about the May 7th. No other statements, right? But I don't know that any other statements are contested. Those are the only ones we're talking about. Right. So you mentioned Wilson v. Laney, and I just want to emphasize that although they have cited it for the proposition that the officers here are entitled to qualified immunity, in Wilson v. Laney, the court held that, in fact, a violation had occurred by bringing the journalist and photographer along, and the only reason qualified immunity was granted was the fact that that was not clearly established law yet, but that was in 1999, and the search here occurred in 2012, so clearly it was clearly established law by the time of the search. And so thus, under a study of Lopez v. Gelhaus, as you know, all of the facts have to be construed in light most favorable to the non-movement at the summary judgment stage, and so we would submit that the record contains a multitude of facts, as Judge England found, that preclude summary judgment. If there are no further questions, I'll give my remaining time back to the court. Thank you. Thank you very much. Counsel, because we ask you a lot of questions, we're going to give you a full minute, moving up from 11 seconds here, so. I'm going to say three very quick things. First off, they did, I'm happy to hear that they're no longer suing for statements to the district attorney and statements at the preliminary hearing and criminal proceedings, because those are in the complaint and the summary judgment papers. 47B clearly applies to those as well. It's all of his statements, not just the initial report. As GARI is a California Supreme Court decision. We're not just citing lower court decisions. Garmin is fundamentally inconsistent with as GARI and didn't discuss it at all, and I think that, even under GAMI, that creates a reason this court can go back and look again at Garmin, because it didn't analyze what as GARI means. Why is that? Because it has to come from a superior court, right? Or someone that has greater authority. As GARI is the California Supreme Court, Your Honor. Right. Right, so that is a superior court in an eerie sense. That is a superior court to this court. Okay, so you say that because the state Supreme Court, as you construe it, changed the rule that satisfies our GAMI versus Miller requirement. Correct. I think you need to look at, take a look at as GARI and the California lower court decisions that it cites and take a fresh look at this Garmin question. And there is a published Ninth Circuit case that goes the other way. It's Black and Horn from 2006, 485 F. 3rd 463. Thank you, Your Honor. Thank you very much, both of you, for your arguments. It's very helpful. The case just argued is submitted. Now we have, I guess you'd call it a companion case. That's also advanced building and fabrication at this time. It's versus the CHP and John Wilson.
judges: M. Smith, Nguyen, Restani